Good morning, Your Honour. Speaking today on behalf of Mr. Bini, the appellant and plaintiff in this matter, is myself, D. Angus Lee. Mr. Bini is in the courtroom today. What we're asking the court to do today is reverse a lower court ruling granting summary judgment to the defendants on a 1983 claim having to do with an arrest in retaliation for Mr. Bini's protected speech. The arrest was without probable cause, and it was in retaliation. In reviewing the briefing and record on this matter, I feel that both sides maybe could have done a better job outlining a chronology of the timeline of events here that really help frame all of the issues. And so if the court would allow, I want to spend about one to two minutes just hitting the high points of the timeline in this case. Mr. Bini became aware of a man by the name of Garrett Smith who was arrested by Vancouver Police Department Detective Sandra Aldridge. He believed that Mr. Smith was at least partially innocent or completely innocent of the charges. On April 1st of 2014, he sent one email. That email did not contain a link to a blog. It contained an attachment. That email was then forwarded to the alleged victim in the case involving Garrett Smith. Forwarded by whom? Forwarded by Phil Betty, who was the recipient of the first email. And how is Mr. Betty related to anyone in the case? He was an associate of Garrett Smith, so Mr. Bini had communicated with associates of Mr. Smith about Mr. Smith's innocence. The email did not ask Mr. Betty or anyone to forward that email to anyone, and it did not ask anyone to contact Ms. Cheryl Smith. Nonetheless, it was forwarded to her and then forwarded to Detective Aldridge. That email contained an attachment referred to as a credibility report. The credibility report. I'm sorry, the attachment was attached by Mr. Betty or attached by Mr. Bini? Attached by Mr. Bini on the first email. It was a credibility report, and it discussed essentially the case against Mr. Smith, the evidence or lack of evidence, and it specifically made criticisms of Detective Aldridge and the Vancouver Police Department. That was the first email. Who prepared the credibility report? I don't think that's in the record. It's an official report? No, it's essentially a PDF that was later seen on the web page that comes up in email, too. But it was prepared by Mr. Bini? It was forwarded by Mr. Bini. No, who prepared the attachment? Who prepared the credibility report? I believe it was Ms. Eccles, but I don't think that's in the record. And who is she? She is the actual author of the blog. Okay. So it was prepared by private citizens. It wasn't prepared by anybody within the police department or the district attorney's office? Correct. It was a citizen's credibility report. It was them saying this case against Mr. Smith largely relies on the credibility of one witness, and so we're comparing in that credibility report the credibility between these two people because there were no other witnesses. Then 14 days later, an email is sent by Mr. Bini to Nathan Smith, and Nathan Smith was Garrett's son. That email did contain a link to the blog. Now, that email was never seen by Cheryl Smith. It was not forwarded to Cheryl Smith. There's no indication she ever saw that. And those are the entirety of emails sent or received in this case. We have two emails in the record, and that's it. Then at a later time, on the 29th of April, Ms. Smith obtained a temporary ex parte restraining order against Mr. Bini. That was served on him on April 29th by Sandra Aldridge,  And the reason she was aware of the emails is the second email was forwarded by Nathan without comment to his mother, who is not Cheryl Smith. It's Mr. Smith's first wife, and then that was forwarded to Detective Aldridge. So at that time, Detective Aldridge was aware of both emails. She served the restraining order, and she, quote, explained to Mr. Bini that he was being investigated for cyber-stalking and that the charge stemmed from the information in the blog he was disseminating. So what was the basis for the restraining order? The ex parte restraining order was based purely on statements by Ms. Smith that said that Mr. Bini had called other people. There were mutual associates of Mr. Garrett Smith and Cheryl Smith that Mr. Bini was alleged to have called. And so the restraining order was not based in any part on anything sent electronically? You don't mention anything so far. Yeah, I don't believe the restraining order was based on the blog. I believe it referenced that he had called and emailed people, but it did not provide any details about who was actually called, what was said, when they were called. It just said he had called people saying certain things about the case. And, of course, that was received ex parte. So when Detective Aldridge served that restraining order on Mr. Bini, she said to him, and this is from her testimony on May 28th at the later hearing, she said that she suggested to Mr. Bini that he take down the blog. She essentially warned him that the blog should come down. So the next day, the blog does come down, and Officer Aldridge maintained status of the blog. She looked to see if it was up or down. Three days later, the blog went back up. And so then on May 7th, Detective Aldridge, with no information aside from the fact that the blog was back up, she had no information beyond what she had when she served the temporary restraining order, she went to him and placed him under arrest for a crime he didn't commit. Namely, she charged him or she placed him under arrest and booked him into the county jail for felony cyber-stalking, a crime that she now admits he couldn't have possibly committed. Could he have committed misdemeanor cyber-stalking? No, he could not. Okay. And I'm going to get to that in just a minute. Can I ask you one question about the timeline that you ran through? So I can't remember the dates now, but the first email that you said he sent, you said it just went to one recipient? In the record, we have the copy of one email, and the two line says undisclosed recipients, which is standard Internet for we don't know who it was sent to. So somebody looking at that would certainly have probable cause to believe that it went to multiple addressees, not just the one person you mentioned, right? You could believe that it was possible, certainly. Okay. Yeah. But you're telling us as a factual matter, even though it said undisclosed recipients, it went to one individual and that's it? No, I'm telling you the record is not clear either way. Oh, okay. You only know of one person because he or she forwarded it to Cheryl Smith. Correct, Your Honor. Okay. So with no additional evidence, she placed him under arrest. The Clark County Prosecutor's Office said we're not charging him with this crime. The Vancouver City Attorney's Office later told her, told Detective Aldridge, that there had to be, quote, additional witnesses who would testify to, quote, receiving multiple emails from Mr. Beeney containing the same disparaging language, end quote. So then she had him arrested a second time after she was advised by the city attorney's office that there needed to be additional evidence. I thought she didn't have him arrested. She threw oversight, did not take down the whatever that thing is called? Am I remembering that right? She put a BOLO, a be on the lookout, to have him arrested. And then she was, after that point, told by the city attorney's office, this is insufficient evidence, and she left the BOLO out. And as a result, he was arrested the second time at his home. Right. So we're asking the court to reverse the lower court summary judgment for a couple of reasons. One is the chronology here makes very clear that Mr. Beeney's protected speech, that is criticism of a law enforcement investigation and a law enforcement officer, is the but-for cause of his first arrest and second arrest. And you know that from the timeline because there was e-mail one and e-mail two, temporary restraining order served, and she could have arrested him then, but she didn't. Instead, she told him, take the blog down. When the blog went down and came back up, that's when she decided to arrest. So you have the but-for causation for the First Amendment retaliatory arrest claim, regardless of whether or not there is probable cause. Now, as it relates to probable cause, there's no evidence of specific intent in this record, and the lower court didn't really analyze that at all. Additionally, if you look at the cyber-stalking statute, and this is really important, it says that you can't have repeated contacts to the person or, and I'm quoting this, a third party, repeated contacts to a third party. The interpretation that the city of Vancouver wants this court to take would essentially make it illegal to do anything on the Internet. They want this court to take the position that there's probable cause under this statute any time an e-mail is, one e-mail that embarrasses somebody else is sent to two people. That suggests that the statute may be overbroad and therefore is unconstitutional. But unconstitutionality wouldn't be a defense here. I mean, it wouldn't be grounds for you to proceed with your suit. In other words, even if we were to say, wow, the statute is unconstitutional, it doesn't mean that Officer Aldridge had to make that judgment and is in violation of the Constitution of the First Amendment under Section 1983 because she failed to anticipate that. I understand the court's point, and we're not taking the position that the statute is unconstitutionally vague. In fact, we don't believe it is. But it's not just because it's vague. I mean, it just may be way overbroad. And we don't think that either. And the reason I say that is because if there was something wrong with the statute, we would have known by now. This statute follows off the telephonic harassment statute. It's very similar. There's a lot of case law interpreting that that's talking about how you have to go directly to the person who's being harassed. You can't telephone call person A and then person B and somehow that be harassment of person C. We have a large body of telephonic harassment case law. And we've had this cyber-stalking statute for quite a while. And even with that, we haven't had any officer who's interpreted the case in such a way, and we haven't had any official interpretation from anybody suggesting the interpretation that the city is suggesting now. If there had been a no-contact order in place here, then it might have been a felony. Is that correct? I believe the statute requires a prior conviction, not just the order. But then it, of course, would have to violate the order. And I would point out that in the order that was entered against Mr. Beeney, the hearing officer said the Web page was protected speech, did not order that the Web page be taken down, said she wouldn't take it down, and the order did not say that he could not post anything on the Internet. So I'm looking at 3C in the cyber-stalking statute. I think you're correct. So it would require a conviction for having violated a no-contact order, not simply the existence of a no-contact order. Right. Okay. So this presents a real – the city is hoping this court would view this statute as somehow authorizing the arrest of any electronic communication to two people. That's embarrassing to somebody else. And if you look on Twitter, if you look on YouTube, if you were to see somebody videoing a protest where people didn't want to be videoed protesting and you're putting that out Facebook Live, for example, you're instantly communicating to multiple people, and that under the city's interpretation is repeated communication. That's not what the statute says. No reasonable officer would have interpreted it this way. I'd like to reserve the balance of my time. Okay. Well, before you sit down, and we'll make sure you get enough chance to respond, I anticipate there's going to be an argument about qualified immunity. Can you give us a hint as to your answer to that argument? Sure. Well, one, we don't believe any reasonable officer would have made this arrest. Second of all, I think in the Ninth Circuit at least, it's been on notice for quite a while that you cannot arrest in retaliation for protected speech. Do you want me to go into that? No, that's okay. All right. Thank you. And you'll save some time. All right. Thank you, Your Honor. Thank you. Good morning, Your Honors. Dan Lloyd, and may it please the Court, Dan Lloyd on behalf of Detective Sandra Aldridge and the City of Vancouver. Just over ten and a half months ago, and following the filing of both principal briefs in this case, the United States Supreme Court confirmed three aspects about the probable cause inquiry that guides disposition of this appeal. That case, D.C. v. Westby, said, number one, probable cause is not a high bar. Number two, probable cause does not require proof of criminal activity, only a fair probability or substantial chance of criminal activity. And three, a court errs when it examines the evidence through a divide-and-conquer lens. The District Court adhered to these three guideposts and properly found that Detective Aldridge had probable cause as a matter of law, which entitles her to qualified immunity. So we heard a fairly detailed narrative from the other side suggesting pretty strongly that she did not have probable cause and suggesting pretty strongly that she had a retaliatory motive. What did she have that gave her probable cause? Thank you. I'm addressing only probable cause for the moment, not retaliation. Only probable cause, and that analysis actually is guided by this Court's precedent in Connor v. Hyman and Ping v. Hugh. Okay, but what facts did she have and what law did she have that gave her probable cause? In terms of the historical facts, meaning what information was provided to Detective Aldridge, the narrative that was just provided to you simply cited to two e-mails that are in the record. However, on summary judgment, we put forth evidence consisting of Detective Aldridge's police report and also Cheryl Smith's declaration in which she adopted her petition in support of the anti-harassment order. Nothing that Mr. Beeney submitted in opposition to summary judgment conflicted with that. So to answer your question, Judge Fletcher, here's what's in the record. On the element of intent to harass, she adopts her petition as true, and then on excerpts of the record 198, she found the e-mails, plural, that were sent to her business associates, her family members, her friends, even her doctor, calling her a habitual drunk, a fraud, that she is aggressively violent when she is drunk, which Mr. Beeney would later admit he had no idea whether it was true. And also that that type of language could be viewed as harassing. On the repeatedly element, Judge Wofford, you properly commented that the e-mails do show that it was sent plural, multiple times on the repeatedly element. Multiple times or to multiple people? Multiple times. Multiple times. You mean the same e-mail forwarded at different times? It's not the same e-mail, but it contains the same thing. It was an e-mail containing the link to the blog. So again... Okay, help me understand the multiple times here. I'm still not sure I'm following you. Sure, sure. And this goes back to the interpretation of cyberstalking, which no Washington court had ever interpreted this statute at all at the time of these arrests. Repeatedly has been construed in the telephone harassment... I want facts, not statute. Okay, but that gets to repeatedly. Repeatedly under Washington law means more than one event. I know, but I'm asking you a factual question. What do you mean when you say repeatedly? What happened that was repeated? That Beeney sent multiple e-mails plural. That is in Detective Aldridge's report. It is in Cheryl Smith's declaration, both of which were unrefuted on summary judgment. E-mails plural. All right. So we've got the link to the blog was found in the e-mail that Beeney sent to Nathan Smith on 4-15, April 15th. Right. Do we know that that was sent to more people than one? More persons than one? The link, yes, and that is contained in Cheryl Smith's declaration where she said that Mr. Beeney was sending e-mails plural that contained links to the blog that called her a drunk. Okay, but this is simply Cheryl Smith's. This is what she told the court. This is what she told the court, and she also told in her declaration, she said she told the police. Did she attach anything that would show that it was sent multiple times, or is this just simply what she said? This is simply what she said, but, again, this goes to the difference between proving a crime beyond a reasonable doubt and simply a fair probability. But it was this, I assume, was an ex parte proceeding when she got the protective order? Yes, but then it wasn't ex parte when Mr. Beeney came in and testified, and the protective order was granted for a year based on the same conduct. Okay, but was there any evidence adduced there that's in the record that shows that he, in fact, sent this multiple times, the one with the link? We have the evidence that the plaintiff said shows that it was sent to Nathan Smith. Do we have evidence that it was sent to anybody other than Nathan Smith? When you're asking is there evidence, is there concrete a copy of the e-mail itself? No, but you have Ms. Smith and Detective Aldridge's unrefuted testimony on summary judgment that it was sent multiple times. What about the e-mail I'm looking at? It's on ER 348. It's an e-mail that Mary Smith, I guess that's the mother of Nathan Smith? That is the mother of Nathan Smith, yes. It's Garrett Smith's ex-wife. Okay, well, it's dated April 14th, and she's forwarding, I guess, to Detective Aldridge an e-mail that her son received, and she says in the cover to Detective Aldridge, here is another e-mail my son received. Is that some suggestion that, in fact, the son had received himself multiple e-mails? Yes, that's exactly right, Judge Wofford. That's exactly right. So this, again, I hate to keep coming back to law, but on qualified immunity, that's a legal inquiry, in that repeatedly in the cyberstalking statute is referring to communications with the intent to harass one person, and then the electronic communication is sent to a third party, a different person. It doesn't have to be sent to the victim under the cyberstalking statute, and actually the legislative history of RCW 961-260 speaks to that, because originally that third party language wasn't in the original bill, but the legislature wanted to expand the protections of those who are victims of online assault. So getting back to the question on qualified immunity and the question on probable cause, when there is no dispute as to the historical facts, meaning what information the officer was given, then qualified immunity and probable cause needs to be determined by the court as a matter of law. And, again, Westby reminds us that we don't need concrete evidence of a crime sufficient to convict. All we need is a fair probability. So when Mary Smith, Judge Wofford, as you'll probably appropriately point out, said, my son Nathan has received another email from Mr. Beeney containing a link to this blog, that's multiple occasions to the same individual. And, again, this goes to the prosecutor's interpretation of this statute, which had never before been interpreted by Washington courts. And this also takes us to Hine v. North Carolina, where the Supreme Court said, even if Detective Aldridge's interpretation of repeatedly is wrong, and even if that exceeds the bound and creates an overbreadth challenge to the cyberstalking statute, it's still a reasonable interpretation of the statute, and she's entitled to base probable cause on that interpretation. The prosecutor, Mr. McClure, might have had very good reason to refrain from moving forward on charges because if a Washington court hadn't interpreted it, he runs the risk of the conviction getting overturned on appeal if Detective Aldridge's interpretation ultimately proves incorrect. Does the existence of probable cause provide a complete protection? That is to say, what if, and this is a what if rather than a factual statement, what if Aldridge did, in fact, want to retaliate, had probable cause, and did this because she was wanting to retaliate? What then? I would submit this Court should wait, just like its fellow panel did. I submitted a Rule 28J letter advising the Court of American News, stating that the Supreme Court just heard oral argument a week ago in Nieves v. Bartlett. That's going to provide you the answer. The Court could reverse the Ninth Circuit, say that probable cause is totally fatal, in which case there's your answer. The Supreme Court could say probable cause is independent, it's irrelevant. Mr. Bartlett can move forward with his lawsuit, in which case that might give you. So you're suggesting we wait for Nieves because if the Court agrees with our decision in Ford, our 2013 decision in Ford, followed in Nieves, then you lose? Potentially. It depends. I don't have a magic eight ball. I don't know what the Supreme Court is going to say. I thought that in our decision in Acosta that we said that the probable cause had nothing to do, I mean, I'm sorry, that the retaliation had nothing to do with whether there was probable cause. You're right, and Acosta does provide that. Then if we have dueling decisions, then how could your client have made a mistake? She couldn't have made a mistake. The reason why I suggest waiting is simply for consistency purposes with American News Information Services versus Gore, which your fellow panel involving Judges Wardlaw, Judge Hurwitz, and District Judge Korman, simply for consistency's sake. But even if the Supreme Court comes back and says that create some new framework, we would submit that the law was not clearly established, not only because of Acosta, but also because even after those arrests, the debate still goes on today as to what effect, if any, probable cause has on a retaliation claim. I don't think that's true in our circuit. Maybe elsewhere you're right, but in our circuit as of 2013 with Ford, the rule was clearly established. Now, it might be upended by what the Supreme Court does. Your reading of Acosta, I think, is off because all the court there said, but tell me if you think I'm misreading it, but all the court there said was that as of 2006, the law was not clearly established on this point. That obviously has nothing to do with what the law was in 2014. That may not be. It's not just my reading. It's actually the reading of other courts within this district who have read Acosta the way we have submitted. What courts? Our court? Ninth Circuit. Ninth Circuit in Oster versus Solano County. Pickray versus Duffet. The Western District of Washington, Blatt versus Shove, which we cited in our brief. The fact is judges within the Ninth Circuit, and there's even an opinion from the District of Oregon, that judges within the Ninth Circuit can't agree, and when judges can't agree, the law is not clearly established. It's not, in the words of Wespe, quote, settled law. Well, I can read Ford, and I know exactly what Ford said the law was as of 2013, so I guess I'm not sure what relevance does, if somebody misread Acosta after that, what relevance does that have? Because if judges can't agree, an officer is entitled to qualified immunity. The Supreme Court has said that. The reality is, actually, this brings us back to Reachley, which is the 2012 Supreme Court case on retaliatory arrest. The Supreme Court there was examining the Tenth Circuit at the time, which was every bit as clearly established as Ford was, but the Supreme Court said, no, Hartman versus Moore cast enough doubt that your circuit precedent is now called into question. So Agent Reachley is entitled to qualified immunity. But we have Ford that comes down after that. Well, let me ask you this, because I'm just not persuaded on this point, but do you concede that if we were to read Ford as having settled the matter, at least whether probable cause is or is not a complete defense to a First Amendment retaliation claim, if that were settled as of 2013, do you agree that there's enough speech independent of the harassing speech on which a First Amendment retaliation claim could be grounded? Not on this record, no. So why not? Because I thought there was evidence that Detective Aldridge was actually listening to the conversations between Mr. Beeney and the suspect. Yes, she was. She was monitoring the jail communications. In which Mr. Beeney was highly critical of her and her conduct, and that the blog, too, had pretty severe criticism of her and the police in general. And so why couldn't a reasonable jury look at that speech and say, boy, yeah, that would be a basis to think that this officer, even if she did have probable cause, was wanting to retaliate against him? If that's the court's direction to adhere to Ford, then it runs the risk of potentially being reversed again by whatever Nieves says. So that's why I would submit we need to wait for Nieves. That's what makes most sense. I don't have much time remaining. I do want to make sure I answer any questions the panel has with respect to probable cause and qualified immunity. But there is a cross-appeal here, and that's on Mr. Beeney's state law criminal records privacy act claim. And our position is very simple on this, is that the Washington Supreme Court has consistently held that when the legislature passes the law, it changes the law. Yet the district court, on our motion to dismiss on the pleadings, said that the 2012 amendment to the criminal records privacy act was already inferred in the statute itself, so the 2012 legislation did not do anything. Why do we even have jurisdiction over this one? Because it is, and we stated this, that it is an adverse order that was entered prior to final judgment. So that enables us to. All it does is remand to the state court for decision. No, there was no removal. This was filed originally in district court. There's no proceedings in state court. My understanding is that you got a dismissal of that claim without prejudice, and you wanted it to be with prejudice? That's the basis on which you agreed? Correct. And we have jurisdiction in that scenario? Yes. When there is a final judgment, a party who has received an adverse order any time below can bring that within the court's jurisdiction. You know what I'm saying? You got the claim dismissed, albeit without prejudice. You're saying that it's enough of a loss when it's not with prejudice? It is, and actually this goes to what the Supreme Court said in Camerata v. Green, where an officer of this – excuse me, I'm about to run out of time. May I please – Listen, we're not going to cut you off. You get to say what you need to say. Thank you, Judge Fletcher. I really appreciate it. In Camerata, this court held that an officer violated the Constitution but was still entitled to qualified immunity. So the claim against that officer was dismissed. The Supreme Court said you still get to seek – In Camerata, I think that was dismissed with prejudice. I think there was a final judgment on that one. No, but that was in favor of the officer. I understand that. But what happened in Camerata was the officer was held to have acted unconstitutionally but then was let off the hook on qualified immunity. And there was then a judgment, a final judgment as to the standard of conduct, and the officer and those associated with the officer were then going to have to live up with that because that was the newly established law. That's not what's going on here. This is a dismissal without prejudice, which has no consequence. He is now free to bring the complaint to state court. No, and that does affect the city of Vancouver because we constantly get public records requests for police reports that now we are forced to look beyond the four corners of the document in order to produce them. But, Judge, this ruling isn't binding? It's a published decision and it's being cited and created mass confusion. But it's not binding, though. If the state courts could look at that and say we're totally unpersuaded, we're going to read it. So why would we weigh in on this dispute when it really should be resolved by the Washington state courts? You don't want us to take jurisdiction over this to decide it and then certify it to the Washington Supreme Court, do you? That's exactly what we're submitting. That's a total waste of time. Why doesn't somebody just bring it in state court? And if Mr. Beeney didn't want to pursue this in state court, then you're off the hook. Ignore the decision. Well, if we ignore the decision, then we potentially subject ourselves to Criminal Records Privacy Act. But you get to argue that in Washington courts. If the Washington courts agree with us, then you're liable. If they disagree with us, then you're not liable. I mean, either way, it seems like you're home free and the Washington courts are free to decide this, that our decision is not binding on the Washington courts. Well, respectfully, Judge Bybee, the way this court has interpreted Washington law does have an effect on how municipalities and parties act within the state of Washington. And we have submitted a reason. Mr. Beeney never submitted anything in opposition to challenge our statement as to why this court has jurisdiction, realizing that this court decides jurisdiction on its own. But as we read the law, that when there is a final judgment, a party who has been adversely affected by any underlying order may bring that order before the court. Okay. Thank you, Your Honor. Thank you. Let's hear from the other side. Thank you, Your Honors. I had just a couple of points that I wanted to make in reply. One, just as far as the record, I've seen it in the briefing and I heard it in argument today that Mr. Beeney at the February 28th hearing, they say admitted that saying certain things would be harassing or embarrassing. And what they do in the brief is they actually quote the question that was proffered to Mr. Beeney. They do not quote his answer. His answer is those things would be embarrassing, quote, if untrue. If untrue, end quote, is what he said. And we submitted police reports from a parallel matter indicating that, in large part, what he had said in those e-mails, the two e-mails, were, in fact, true or at least arguable. How do you respond to the argument that Officer Aldridge was entitled to rely upon the statements in Ms. Smith's seeking the protective order? Because she says, listen, he was doing these e-mails, plural. She's not entitled to rely on that? I don't think that at the time of arrest we look at what was in a court file that the detective was not aware of. And I don't think there's anything in the record saying at the time of the first or second arrest that Officer Aldridge had reviewed that court file or the declaration and the petition for the temporary restraining order. So they can't rely on that now and kind of bring after-the-fact information into the probable cause analysis because that's based on knowledge at the time. And so you're contending there's nothing on the record to suggest that she'd seen this at the time of either of the arrests? The declaration for the temporary restraining order? I don't believe there is. And then I did want to, in my time, just point out that there was some discussion about Rochelle and the idea that that may have answered a question. If you look at footnote 8 in Lacey v. Maricopa, it says very clearly that Rochelle did not answer the arrest question. That was a prosecution question. And as far as the request to wait for a ruling in Bartlett, the Supreme Court took Lozeman and said, hey, we're going to answer this in Lozeman, and they didn't. And there's really no guarantee that they'll answer the probable cause immunity question in Bartlett, so we would prefer not to wait. And we do think this case is also pretty dissimilar from Bartlett. Bartlett, that was officers in the heat of the moment at an alcohol party. This is somebody writing on the Internet about the officer's case that they investigated. So we would ask that the Court reverse the lower court. Thank you. Thank both sides for good arguments. The case of Beeney v. City of Vancouver and Aldridge now submitted for decision. The next case on the argument calendar this morning, Orion Insurance Group v. Washington Office of Minority and Women's Business Enterprises.
judges: W. Fletcher, Bybee, Watford